# ARTHUR JOHNSON *v.* STATE OF MARYLAND

[No. 65, Initial Term, 1967.]

*Decided April 25, 1967.*

The cause was argued before ANDERSON, MORTON, and ORTH, JJ., and MACGILL, J., Chief Judge of the Fifth Judicial Circuit, specially assigned, and JENIFER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Richard K. Jacobsen,* for appellant.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Malcolm R. Kitt, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellant, Arthur Johnson, was tried in the Criminal Court of Baltimore under one indictment charging him with arson, and seven indictments charging him with murder. He was tried by the court, sitting without a jury, and was found guilty of arson and guilty of murder in the first degree under all of the seven indictments for murder. He received a sentence of twenty years in the Maryland Penitentiary for arson and life imprisonment under each indictment for murder, the first two sentences to run consecutively and the remaining five to run concurrently. From these judgments and sentences, he has now appealed to this Court.

On his appeal he raises two contentions: (1) that the principles laid down in *Miranda v. Arizona* should be applied to this case; (2) that the trial court erred when it ruled that the appellant's statement had been given voluntarily.

On December 1, 1964, a fire occurred at 2631 E. Oliver Street, Baltimore City, which claimed the lives of seven small children. Thereafter, members of the Baltimore City Fire and Police Departments conducted an investigation to determine its origin. This investigation ultimately led them to a person

known as "Chum," who was later identified as the appellant. It had been established that three gallon cans of gasoline had been used to accelerate the fire, and that the gasoline had been purchased at a Shell gas station not far from the scene of the blaze by one Kennard Smith, a resident of the house that had been destroyed and the father of the seven children who perished in it. Appellant was with Smith at the time. After appellant was arrested he was placed in a line-up and identified by two people, Alice Dubose, a lady who had seen the appellant in the company of Kennard Smith shortly before the fire when he came to her home with Smith who borrowed a dollar to buy the gasoline, and George H. Moore, the gas station attendant, who stated that about 3:30 a.m. Smith and the appellant came to the gas station and he sold them three gallons of gas which was placed in three Prestone cans which they had found on the premises. Smith paid for the gas, which cost .73¢, and after giving him the change they left. One took two cans and the other picked up one can. After his arrest appellant was questioned by the police and signed a confession admitting his complicity in the arson.

In his confession he stated that after he and Smith had gotten the gas from the Shell station they had gone to Smith's wife's home on Oliver Street. They first went to the back of the house where Smith poured one of the cans on the steps and around the doorway and then lit it and set it afire. Then they walked around to the front of the house, each carrying a can. When they got to the front, Smith threw his can through the front window, lit a match, and set that afire. Somebody came to the front door and Smith spoke to him. Whoever it was went back inside the house, and appellant threw the can of gasoline he had in the vestibule, and they both left and caught a cab to South Baltimore where they separated. He stated that prior to arriving at the house Smith had told him he was going to kill his wife. Seven children were burned to death in the fire.

When the case was called for trial, appellant's counsel entered a plea of not guilty generally and not guilty by reason of insanity. The trial judge found the defendant was sane at the time of the commission of the crime and sane at the time of trial. The State attempted to introduce appellant's confes-

sion in evidence, but defense counsel challenged its voluntariness. After the taking of testimony on this issue, the lower court held it to be voluntary and the statement was admitted in evidence.

## I

In his first contention appellant contends that the principles laid down in *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), should be applied to this case. He admits that the Supreme Court has held in *Johnson v. New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882 (1966), that *Miranda* standards shall not apply to cases heard prior to June 13, 1966, but argues that a State Court is not prohibited from extending greater constitutional safeguards than those minimally required by the Supreme Court.

However, the Maryland Court of Appeals, when given an opportunity to apply the *Miranda* standards to trials which had begun prior to June 13, 1966, has consistently followed the *Johnson* date. *Westfall v. State,* 243 Md. 413, 221 A. 2d 646 (1966); *Campbell v. State,* 244 Md. 363, 223 A. 2d 604 (1966); *Johnson v. Warden,* 244 Md. 384, 223 A. 2d 584 (1966); *Mundell v. State,* 244 Md. 91, 93, 223 A. 2d 184 (1966); *Young v. Warden,* 245 Md. 76, 224 A. 2d 842 (1966). Since the instant case was tried December 7, 8, and 9, 1965, the guidelines as laid down in *Miranda* would not apply here.

## II

Appellant's principal contention is that the statement or confession which he gave to the police following his arrest was not freely and voluntarily given, and the lower court committed error in admitting it in evidence.

He argues that when one looks at all the circumstances attending the appellant's confession, it becomes obvious that the statement which he gave to the police was not given freely and voluntarily. He admits that the fact that he was not advised of his right to a court-appointed attorney, standing alone, would not be enough to render the confession inadmissible, but when this element is added to all the other circumstances leading up to the interrogation, he contends that he did not freely and voluntarily confess to the police. He contends that the fact that

he had been placed in a line-up the day before and was asso-ciated with the arson at that time (apparently before he was given any advice to remain silent, his right to counsel, etc.); the fact that he was questioned extensively by the police the following day; the fact that he was of low mentality and, if not deranged, at least fairly well disorganized, taken together support the theory that the statements given by him were not given voluntarily.

Appellant does not contend that there was a request to call counsel, nor was there a denial of the right to see counsel. Appellant's statement was completed within an hour and fifteen minutes from the beginning of the interrogation. Prior to making any statement appellant was advised (according to the State's evidence, and the trial court so found) that he did not have to make a statement, that he had a right to a lawyer and could call relatives if he chose to do so. Where similar admonitions were given prior to the taking of statements, the Court of Appeals has found them to be sufficient warnings and in full compliance with *Escobedo v. Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 977 (1964). *Hadder v. State,* 238 Md. 341, 357, 209 A. 2d 70 (1965), and cases therein cited.

In *Jenkins v. State,* 238 Md. 451, 209 A. 2d 616 (1965), the Court of Appeals found no abuse of discretion in the trial court's preliminary determination that a defendant's statement was voluntary, even though there was testimony that he had a low I.Q., organic brain damage, a poor ability to read and spell and had the intellectual capacity of a sixth grade graduate.

Here, the appellant was fifty years of age at the time of his arrest, had completed the seventh grade and could admittedly read and write. There is no evidence to show that his will was overborne or that he was not intellectually capable of understanding either the admonition given or the nature of the act of incriminating himself when viewed in the setting of a short period of interrogation under circumstances where appellant was not interrogated until after getting rest and sleep. All the evidence points to the fact that the appellant was well treated and that there was no coercion on the part of the police.

In a trial before a court, sitting without a jury, it is a matter for the trial court to decide whether a statement was freely and

222

voluntarily given and its determination thereon will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Oakley v. State,* 238 Md. 48, 54, 207 A. 2d 472 (1965). Here, the trial judge took great care in allowing the admission of all possible evidence bearing on the admissibility of the confession before arriving at his determination.

We, therefore, hold that the trial judge committed no error in admitting the statement.

*Judgments affirmed.*