BALLARD ROGER BAKER *v.* STATE OF
MARYLAND

[No. 119, September Term, 1967.]

252

*Decided February 27, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Richard K. Jacobsen,* with whom was *Anthony J. Sacco* on the brief, for appellant.

*William B. Whiteford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Robert J. Woods, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant was convicted of burglary by a jury in the Circuit Court for Prince George's County on March 17, 1967, and sentenced to twenty years in the Maryland Penitentiary. Immediately following the imposition of this sentence, appellant pleaded guilty to a charge of grand larceny under another indictment, and was sentenced to fifteen years in the Maryland Penitentiary, to run concurrently with the prior sentence for burglary. On this appeal from both convictions, appellant contends, as to the burglary convictions, (a) that the lower court erred in failing to propound certain questions to prospective jurors on *voir dire*, (b) that the police line-up was not fairly conducted, (c) that illegally seized evidence was admitted at trial, and (d) that the evidence was insufficient to support the conviction. He further contends, apparently as to both convictions, that the sentencing procedure constituted a denial of due process in that the trial judge relied on matters not in evidence and not proven at trial when imposing sentence.

The evidence adduced at the trial indicated that at about 2:00 a.m. on December 31, 1966, Mrs. Bida Williams, after hearing the door in her house open and close, discovered a man in the basement of her home. Mrs. Williams testified that the door through which the man had entered was unlocked but closed; that she observed him in the light at distances varying between four to twenty-five feet; that he was wearing a tan short waist Eisenhower jacket, light colored pants, and a red plaid hunting hat; that the man kept his back to her at all times and she did not see his face; that he told her in a "hillbilly voice" that he was in the wrong house, and that he left the premises without taking anything and without further incident.

The evidence further showed that following Mrs. Williams' report of the crime to the police, Detective Joseph Vasco initiated an investigation, as a result of which he placed appellant under surveillance, over a six day period, thereafter arresting him without a warrant on January 13, 1967 in a wooded area in Bladensburg, Maryland.

Appellant was placed in a police line-up after his arrest and was identified by Mrs. Williams as the individual whom she had seen in her basement. She testified that her identification of the appellant was based on the clothing he was then wear-

ing, his stance, voice, height and weight. She identified appellant again at the trial.

Appellant requested the court at the outset of the trial to ask prospective jurors on *voir dire* whether they were related to any police officer and whether they knew either the State's or appellant's attorney. The court declined to propound these questions as phrased, but instead asked the jurors whether they knew either the appellant, Mrs. Williams, or Detective Vasco, and if any of them had been recent clients of either attorney. We see no error in the court's failure to propound the questions requested by appellant. The purpose of the *voir dire* examination is to ascertain the existence of cause for disqualification and for no other purpose. *Giles v. State*, 229 Md. 370. Neither mere acquaintance with an individual or group, nor mere relationship to witnesses, other than parties, is sufficient basis for challenging a prospective juror for cause. *Goldstein v. State*, 220 Md. 39. The question as to the connection of any juror with the attorneys did not have to be asked, *Brown v. State*, 220 Md. 29, 34, nor did the question as to the relationship of the jurors to any police officers, *Borman v. State*, 1 Md. App. 276, 278-279.

Appellant's contention that the police line-up was unfairly conducted is seemingly based on the fact that he was dressed in the same clothing, except for a different hat, that he was alleged to have worn when observed by Mrs. Williams in her home; and, further, that Mrs. Williams was told by Detective Vasco, prior to viewing the line-up, that he had been tracking "this man" and that "he assumed that he was the one that they were looking for." While the circumstances under which the line-up was conducted leave much to be desired, we are satisfied from the record before us that Mrs Williams' identification was predicated on her close observation of appellant's posture, stance, height and weight, and of his voice which she heard again at the line-up, and not alone or primarily on the basis of the clothing that he was wearing in the line-up. Mrs. Williams identified photographs of the line-up at the trial, and of appellant standing therein. These photographs were introduced into evidence without objection and, additionally, appellant made no objection to the testimony of Mrs. Williams relative to her identification of appellant at the line-up. We, therefore, hold

that the line-up was not so conducted as to affront any of appellant's constitutional rights, and, furthermore, that since the question was not raised below, it is not properly before us on appeal. Maryland Rule 1085.

Appellant further contends that his arrest was illegal and that certain wearing apparel and a flashlight taken from him at the time of his arrest should not have been admitted into evidence at the trial. This contention, however, is not properly before us on appeal, and we decline to consider it, as there was no objection to the introduction of the evidence. To preserve an issue on appeal in regard to the admissibility of evidence, there must be an objection made to the question eliciting the allegedly objectionable answer, *Culver v. State,* 1 Md. App. 406. The rule is not different where evidence alleged to be illegally seized is involved, since *Mapp v. Ohio,* 367 U. S. 643, recognized that State procedural requirements to raise or preserve the question may still be respected. See *Porter v. State,* 230 Md. 535 ; *Gaudio v. State,* 1 Md. App. 455 ; Maryland Rule 1085.

Nor do we think that there is merit to appellant's contention that the evidence was insufficient to support the burglary conviction. The fact that Mrs. Williams never saw appellant's face goes to the weight of the evidence to be attached to her identification and was a question for the determination of the jury. That she had ample opportunity to observe the appellant's height and weight, posture, stance, speech, and clothing, is clearly supported by evidence in the record. That there was legally sufficient evidence of a breaking and entering in the nighttime is likewise clear, and whether it was done with the intent to commit a felony was a matter for the jury's determination under the facts and circumstances of the case. We think there was sufficient evidence to go to the jury and, therefore, find no error in the court's denial of appellant's motion for acquittal made at the end of the entire case

Appellant's final contention is that he was denied due prcoess of law when the trial judge, after verdict, imposed sentences based, in part at least, upon considerations not in evidence and not proven at trial. The record shows that immediately after appellant was convicted by the jury on the burglary charge, the trial judge, after ascertaining that appellant was ready for sentencing, was informed by the State that appellant had been

convicted of burglary in 1942 and sentenced to four years, and was again convicted of burglary in 1960 and sentenced to seven years in the Maryland Penitentiary. The trial judge then proceeded to sentence appellant on the burglary conviction, stating at the outset that he was convinced of appellant's guilt; that he thought appellant was a professional burglar and that considering the testimony at the trial, "between the lines, and filling in the gaps where objections stopped the testimony," he thought that appellant "had a concerted plan of going around houses here in Prince George's County and entering where you could, without forcing anything, and stealing whatever you could carry away." The trial judge further stated that it was difficult for him to appreciate why anyone would choose such a livelihood but that appellant seemed to have done so; but that in Prince George's County "We don't put up with that." The court expressed the view that appellant could not be rehabilitated and he was sentenced on the burglary conviction to the maximum term of imprisonment for that offense, namely twenty years.

It appears to us that what the trial judge had in mind when he spoke of considering the testimony "between the lines" and "filling in the gaps where objections stopped the testimony" was the testimony of Detective Vasco who indicated that burglaries similar to that of the Williams' home had occurred on December 31; that he had, through investigation, undertaken to develop a suspect whose *modus operandi* was the non-forceful entry into homes through unlocked doors; and that as a consequence of his investigation, appellant was placed under surveillance for six days and thereafter arrested, apparently while on his way to commit another burglary. There was also testimony, the substance of which was cut off by an objection, which tended to indicate that Mrs. Williams' neighbor's home had also been burglarized on the same night. In addition, there was testimony that Detective Vasco had been "tracking" appellant and that he assumed that appellant was the man for whom they were looking.

It is well settled that imposition of a sentence in a criminal case in this State is a matter peculiarly within the province of the trial judge who hears the case and sees the witnesses and the accused. *Reid v. State,* 200 Md. 89; *Gee v. State,* 2 Md.

App. 61. The length of the sentence is therefore not ordinarily reviewable on appeal, if it is within the statutory limit and not dictated by passion, prejudice, ill will or any other unworthy motive. *James v. State,* 242 Md. 424; *Logan v. State,* 1 Md. App. 213. The sentencing judge may, of course, after verdict, inquire into the past criminal record of the defendant and hear evidence and receive reports in aggravation or mitigation of punishment; the inquiry of the judge is not limited by the strict rules of evidence and he is invested with wide discretion in determining the sentence to be imposed. *Purnell v. State,* 241 Md. 582; *Farrell v. State,* 213 Md. 348. In other words, to aid the sentencing judge in exercising this discretion intelligently, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed, so that he may consider information obtained outside the courtroom and from persons whom the defendant has not been permitted to confront or cross-examine. *Scott v. State,* 238 Md. 265; *Costello v. State,* 237 Md. 464; *Driver v. State,* 201 Md. 25.

But nothing in these rules immunizes the procedure pursuant to which an accused is sentenced after verdict from scrutiny under the due process clause of the Fourteenth Amendment to the Federal Constitution. *Williams v. New York,* 337 U. S. 241; *Townsend v. Burke,* 334 U. S. 736. So, in *Costello v. State, supra,* where it was contended that the procedure in the determination of the sentence violated due process of law, the court held at page 469 that such a contention would be reviewable on appeal "as an exception to the general principle."

In *Walker v. State,* 186 Md. 440, it was held that it was not proper for the trial judge, in imposing sentence, to consider charges of which the defendant had been acquitted. And, in *Purnell v. State, supra,* it was held, in effect, that in sentencing a convicted defendant, the trial judge should not consider accusations of crime which the defendant did not admit, although in *Scott v. State, supra,* a case involving revocation of probation proceedings, which the court found similar to the

original sentencing process, it was held that the trial judge, in determining whether to revoke the defendant's probation, could properly consider clear evidence of defendant's guilt of a crime of which he had been acquitted, where such evidence had not been presented to the trier of fact. But in *Driver v. State, supra,* where a pre-sentence report of the chief medical officer contained a statement that the defendant was "rumored" to have raped a woman and approached a child for the same purpose, it was held, in effect, that the sentencing court should not "give consideration to anything based only upon rumor." And in *Costello v. State, supra,* at page 475, it was held that besides the general prohibition against considering evidence that is not within the limits fixed by law, there is a specific requirement that any information that might influence the judgment of the sentencing judge, which was not received from the defendant himself or was not given in his presence, should (without necessarily disclosing its source) be called to his attention so as to afford him an opportunity to refute or discredit it.

That a just sentence based on proper considerations is an essential element of a fair trial cannot be questioned. It is by no means clear to us that the sentencing judge did not, in imposing the maximum sentence on the burglary conviction, give prime consideration to the possibility that appellant, though neither charged nor convicted of other similar burglaries in Prince George's County, was nevertheless guilty of committing them, as implied by Detective Vasco's testimony. We cannot ascertain with certainty from the record before us whether the trial judge was influenced by such an impermissible consideration in fixing the length of the sentence, both as to the burglary and grand larceny convictions. If he was, and if any part of the sentence is attributable to his consideration of such data, we think the appellant would have been denied due process of law in the sentencing process under the Fourteenth Amendment to the Federal Constitution.

While we think there was legally sufficient evidence from which the jury could properly find appellant guilty of the burglary of Mrs. Williams' house, and there is no contention that appellant's guilty plea to the grand larceny count was not voluntarily made, we must nevertheless remand the case for the limited purpose of having the trial judge reconsider the sen-

tences imposed on both convictions in accordance with the views herein expressed, and without consideration of appellant's possible involvement in other burglaries for which he was neither charged nor convicted, and which he did not admit.

> *Judgments of conviction of burglary (Criminal Trials No. 6804) and grand larceny (Criminal Trials No. 6805) affirmed; cases remanded for the limited purpose of redetermination of the sentences imposed not inconsistent with the views expressed in this opinion.*